# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Case Number: 4:12-CR-00098 |
| v. | § | Judge Mazzant |
| | § | |
| RONNIE D. LEWIS | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

Pending before the Court is Defendant Ronnie D. Lewis's Renewed Motion for Compassionate Release/Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. #400). The Court, having considered the motion, the response, the record, and the applicable law, finds that the motion must be **DENIED**.

## I.   Background

On September 16, 2014, Defendant Ronnie D. Lewis was sentenced to 186 months' imprisonment after he was found guilty of Conspiracy to Commit Mail Fraud and Aiding and Abetting Mail Fraud, in violation of 18 U.S.C. §§ 1341, 1342, 1349 (Dkt. #333).  Defendant is currently serving his sentence at FCI El Reno.  *See* https://www.bop.gov/inmateloc/ (Register Number: 05363-097).  The Bureau of Prisons ("BOP") projects that Defendant will be released on October 25, 2025.  *Id.*

Defendant appealed the Court's judgment (Dkt. #331).  The Fifth Circuit affirmed the Court's judgment on July 7, 2015.  *United States v. Lewis*, 609 F. App'x 221 (5th Cir. 2015) (per curiam).

On July 13, 2020, Defendant filed his first motion for compassionate release (Dkt. #397). The Court denied Defendant's motion for failure to exhaust his administrative remedies (Dkt. #398).

On July 5, 2022, Defendant filed his second motion for compassionate release (Dkt. #400). Defendant asserts that the COVID-19 pandemic, combined with his underlying health conditions, constitutes an "extraordinary and compelling" reason to grant a sentence reduction. The Government opposes the motion, asserting that Defendant's health conditions are not "extraordinary and compelling" (Dkt. #402).

## II.  Legal Standard

### A.     18 U.S.C. § 3582(C)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c).  One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984.  Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a).  *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)).  Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling

reasons for sentence reduction, including the criteria to be applied and a list of specific examples."
28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define
"extraordinary and compelling reasons" and promulgated United States Sentencing Guidelines
("U.S.S.G.) § 1B1.13.  In application note 1 to § 1B1.13, the Sentencing Commission described
what circumstances constitute "extraordinary and compelling reasons" for purposes of
§ 3582(c)(1)(A)(i).  U.S.S.G. § 1B1.13 cmt. n.1.  The Sentencing Commission essentially created
four categories of "extraordinary and compelling reasons," which can broadly be characterized as:
(1) circumstances arising from certain medical conditions; (2) circumstances arising from the age
of the defendant;[1] (3) issues arising from the defendant's family circumstances;[2] and (4) other
reasons that the BOP agrees are extraordinary and compelling in a specific case.  *Id.*  And because
§ 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing
Commission's policy statements issued pursuant to § 994(t), the policy statements contained in
§ 1B1.13 were binding on district courts considering § 3582(c)(1)(A)(i) motions.  *See United
States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's
policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when
considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended § 3582(c)(1)(A) with the passage of the First Step Act.  The
amendment provided that, in cases where the BOP does not file a compassionate-release motion

---

[1] Specifically, a defendant, who is at least 65 years old, who "is experiencing a serious deterioration in physical or
mental health because of the aging process" and also "has served at least 10 years or 75 percent of his or her term of
imprisonment" may meet the requirement that "extraordinary and compelling reasons" exist.  U.S.S.G. § 1B1.13,
n.1(B).

[2] Such family circumstances exist where: (1) a defendant has minor children whose caregiver dies or becomes
incapacitated; or (2) "incapacitation of the defendant's spouse or registered partner when the defendant would be the
only available caregiver for the spouse or registered partner."  U.S.S.G. § 1B1.13, n.1(C).

on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, § 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under § 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to § 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to § 3582(c)(1)(A) motions filed by prisoners. 993 F.3d at 392.[3] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a § 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a § 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the [BOP]. But it does not govern here—on the newly authorized motion of a prisoner." (internal quotations omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason"

---

[3] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g., United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all § 3582(c)(1)(A) motions).

under § 3582(c)(1)(A)(i).

     **B.**     **Extraordinary and Compelling Reasons**

     Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant.  Courts should still look to the policy statement for guidance in determining what constitutes "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the [U.S.S.G.] § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g., United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.").  Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

     First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same.  Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant."  18 U.S.C. § 3582(c)(1)(A).  And as noted above, the First Step Act did not change § 3582(c)(1)(A)'s substantive requirements.  Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed

motions because the same standard governs both motions.  In other words, § 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern § 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in § 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf.  *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request.   Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions.  The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under § 3582(c)(1)(A).

Indeed, § 1B1.13 does not become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP.  Rather, § 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'" because the standard applies equally to BOP motions and prisoner motions.  *Gunn*, 980 F.3d at 1180.  When the Sentencing Commission promulgated § 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A).

Further, 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards

governing prisoner motions and standards governing BOP motions.  Rather, § 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A).  And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of § 994(t)'s directive.  *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t).").  Because § 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of § 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under § 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are generally those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes.  To be clear, the "extraordinary and compelling reasons" contained in the Sentencing Commission's policy statement are neither exhaustive nor binding on the Court.  *Shkambi*, 993 F.3d at 392.  But, in any event, the Court's analysis of whether Defendant has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided—though not strictly bound—by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

## C.      18 U.S.C. § 3553(a) Factors

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction.  *See* 18 U.S.C. § 3582(c)(1)(A).  These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law,

7

and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

### III. Analysis

Defendant moves for compassionate release based on health concerns related to the COVID-19 pandemic (Dkt. #400).  The Government argues Defendant's health conditions do not constitute "extraordinary and compelling" reasons for early release (Dkt. #402).

Although Defendant has met § 3582(c)(1)(A)'s exhaustion requirement, he has not met the statute's requirement that "extraordinary and compelling reasons" exist warranting a reduction of his sentence.  Defendant's motion, therefore, must be denied.

### A.    Defendant Has Met § 3582(c)(1)(A)'s Exhaustion Requirement.

The Court may only consider Defendant's motion for compassionate if he first meets § 3582(c)(1)(A)'s exhaustion requirement.   Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative

8

remedies.  18 U.S.C. § 3582(c)(1)(A).  Fully exhausting administrative remedies requires a denial by the warden of a defendant's facility or waiting thirty days without receiving a response to a request, whichever is earlier.[4]  *Id.*

Section 3582(c)(1)(A)'s exhaustion requirement is not waivable.  *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . ."); *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects the Covid-19 pandemic . . . § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period.").  If a defendant has not sought relief from the BOP, or has not waited thirty days since seeking relief, the Court may not consider their motion.

On June 1, 2020, Defendant submitted a request to the warden at FCI Lompoc to grant Defendant compassionate release.  The warden at FCI Lompoc denied Defendants' request on August 17, 2020 (Dkt. #402).  Thus, Defendant has met § 3582(c)(1)(A)'s exhaustion requirement. However, Defendant's motion nevertheless fails because he has not established "extraordinary and compelling" reasons for early release.

**B.      Defendant Has Not Met § 3582(c)(1)(A)'s Requirement that "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction.**

Defendant's compassionate release motion turns on his assertion that the health risks associated with COVID-19 constitute extraordinary and compelling reasons to reduce his sentence.

---

[4] BOP regulations define "warden" to include "the chief executive officer of . . . any federal penal or correctional institution or facility." 28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by the Residential Re-entry Manager suffices to exhaust his administrative rights").

Defendant's assertion fails because his conditions are not severe enough to constitute "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i).

Defendant's medical conditions and related COVID-19 concerns do not fall within the first category of "extraordinary and compelling reasons" identified within the Sentencing Commission's guidelines. Section 1B1.13's application note 1 provides the following two circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13 cmt. n.1(A). Thus, the mere existence of COVID-19 in society cannot independently justify a sentence reduction. *See United States v. Miller*, No. 2:17-CR-015-D, 2020 WL 2514887, *2 (N.D. Tex. May 15, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)); *see also United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence.").

Defendant argues he is entitled to compassionate release because he suffers from several ailments that place him at higher risk of complications associated with COVID-19, including diabetes, high blood pressure, and obesity (Dkt. #400). However, Defendant is not subject to a

terminal illness, and the medical conditions he currently suffers from are insufficient to constitute "extraordinary and compelling reasons." *See Thompson*, 984 F.3d at 434 (affirming lower court's decision that hypertension and diabetes are insufficient to constitute "extraordinary and compelling reasons" alone unless combined with other extenuating circumstances.); *United States v. Raymer*, No. 4:17-CR-153, 2020 WL 3451855, at *3–4 (E.D. Tex. June 23, 2020) (concluding that a borderline-obese 43-year-old man, suffering from fatty liver disease, bronchitis, and asthma, and who had contracted COVID, did not qualify for early release).

Any suggestion that Defendant's underlying medical conditions, coupled with the risk of contracting COVID-19, substantially diminish his ability to provide self-care due to his conditions of confinement does not comport with the plain text of application note 1 to U.S.S.G. § 1B1.13. The note is written in the present tense. That is, the defendant must be presently suffering from a serious medical condition and such condition must presently diminish the defendant's capacity to engage in selfcare in the environment of a correctional facility. By contrast, Defendant's motion relies on the risk of him contracting COVID-19 in the future and the risk that COVID-19 would have serious effects on him. However, the record shows Defendant's medical conditions can be managed through routine care.

Additionally, Defendant's records also indicate he has received three doses of the Moderna vaccine for COVID-19 (Dkt. #403, Exhibit C), which limits his eligibility for compassionate release. *See United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)"); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release to defendant with several chronic medical conditions when

defendant had been fully vaccinated).

Furthermore, Defendant contracted the COVID-19 virus and, fortunately, recovered. Although there is not yet scientific certainty regarding the risk of reinfection, the large majority of courts to address the matter have concluded that the risk is mitigated and that compassionate release is not justified for an inmate who has contracted and recovered from the virus. *See, e.g.*, *United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) ("this Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was asymptomatic. To the contrary, the consensus is that such a circumstance does not warrant release"); *United States v. Pavao-Kaaekuahiwi*, 2020 WL 7700097, at *3 (D. Haw. Dec. 28, 2020) (relying on Oxford University study suggesting "that people who have a positive antibody test result using widely available assays have substantial immunity to SARS-CoV-2 and are at lower risk for future infection"); *United States v. Jenkins*, 2021 WL 665854, at *4 (S.D. Ind. Feb. 19, 2021) ("To date, this Court has declined to find extraordinary and compelling circumstances warranting a sentence reduction when a defendant has recovered from COVID-19 – even when that defendant has risk factors for severe symptoms . . . The fact that the BOP is now actively vaccinating inmates against COVID-19 . . . only underscores the speculative nature of any concern about reinfection").  Thus, the risk Defendant faces from the virus, whether considered alone or in conjunction with his underlying conditions, does not constitute an extraordinary and compelling reason within the meaning of § 3582(c)(1)(A)(i).

The Court does not downplay Defendant's health issues or suggest that his concerns about COVID-19 are unreasonable.  However, weighing the evidence, Defendant fails to prove that his incarceration is "extraordinary and compelling" under § 3582(c)(1)(A)(i) framework.  *See United States v. Stowe*, No. CR H-11-803(2), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (citation

omitted) (stating that the defendant generally "has the burden to show circumstance meeting the test for compassionate release").[5]

\*     \*     \*

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies.  *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same).  Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence.  Because Defendant has failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), his motion must be denied.[6]

### IV. Conclusion

It is therefore **ORDERED** that Defendant Ronnie D. Lewis's Renewed Motion for Compassionate Release/Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. #400) is **DENIED**.

**IT IS SO ORDERED.**
**SIGNED this 18th day of October, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[5] Given Defendant's failure to meet § 3582(c)(1)(A)'s requirements, the Court need not address whether the applicable 18 U.S.C. § 3553(a) factors support a sentence reduction.

[6] In the alternative, the Court is also unable to order home confinement.  The BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b); *see also United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").